Robert C. Schubert (S.B.N. 62684)
(rschubert@sjk.law)
Dustin L. Schubert (S.B.N. 254876)
(dschubert@sjk.law)
Amber L. Schubert (S.B.N. 278696)
(aschubert@sjk.law)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union. St., Suite 200
San Francisco, California 94123
Telephone:     (415) 788-4220
Facsimile:     (415) 788-0161

*Counsel for Plaintiffs Robert Bass*
*and Jody Frease and the Putative Class*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO / OAKLAND DIVISION

| | |
|---|---|
| Robert Bass and Jody Frease, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> Orrick, Herrington & Sutcliffe LLP, <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> <u>**JURY TRIAL DEMANDED**</u> |

Upon personal knowledge as to their own acts, and based upon their investigation, the investigation of counsel, and information and belief as to all other matters, Plaintiffs Robert Bass and Jody Frease, on behalf of themselves and all others similarly situated, allege as follows:

## SUMMARY OF THE ACTION

1.      Plaintiffs bring this class action against Orrick, Herrington & Sutcliffe LLP ("Orrick") for its failure to adequately secure and safeguard their and at least 461,100 other individuals' personally identifying information ("PII") and personal health information ("PHI"), including names, addresses, telephone numbers, dates of birth, email addresses, Social Security numbers, and health, vision, or dental insurance account or identification numbers, among other sensitive, private, and confidential data.

2.      Defendant Orrick is an international law firm with over twenty-five total offices domestically and internationally and touts its "suite of forward-thinking cybersecurity and privacy solutions" which help "protect employee and consumer data."[1]

3.      In the course of providing legal services to its clients, individuals provided (or Orrick otherwise received) PII and PHI from hundreds of thousands of persons, including minors. In turn, Orrick comes into the possession of, and maintains extensive files containing, the PII and PHI of its clients and other persons, and owes these individuals a duty to adequately protect and safeguard this private information against theft and misuse. Despite such duties created by statute and common law, at all relevant times, Orrick utilized deficient data security practices, thereby allowing hundreds of thousands of persons' sensitive and private data to fall into the hands of strangers.

4.      Between February 28, 2023 and March 13, 2023, Orrick lost control over this highly sensitive and confidential PII and PHI of Plaintiffs and the Class Members (defined herein) in a massive and preventable data breach apparently perpetrated by cybercriminals (the "Data Breach"). According to Orrick, on March 13, 2023, it detected that an unauthorized third party had gained remote access to a portion of its network, including a file share that Orrick used to store certain client files. Orrick then claims it took immediate steps to block the cyberattack. Thus, cybercriminals had

---

[1] Cyber, Privacy & Data Innovation, ORRICK, https://www.orrick.com/en/Practices/Cyber-Privacy-and-Data-Innovation (last visited Nov. 27, 2023).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

unfettered access to Plaintiffs' and the Class's highly private information for thirteen days before Orrick first learned that its inadequately protected networks and systems were critically compromised by thieves.

5.     The Data Breach was directly and proximately caused by Orrick's failure to implement reasonable and industry standard data security practices necessary to protect its systems from a foreseeable and preventable cyberattack. Through this wrongful conduct, the sensitive PII and PHI of at least 461,100 individuals is now in the hands of cybercriminals, who target this sensitive data for its value to identity thieves. Plaintiffs and Class Members are now at a significantly increased and impending risk of fraud, identity theft, and similar forms of criminal mischief—risks which may last the rest of their lives. Consequently, Plaintiffs and Class Members must devote substantially more time, money, and energy to protect themselves, to the extent possible, from these crimes. Moreover, Plaintiffs and Class Members have lost the inherent value of their private data.

6.     By aggregating information obtained from the Data Breach with other sources, or other methods, criminals can assemble a full dossier of private information on an individual to facilitate a wide variety of frauds, thefts, and scams. Criminals can and do use victims' names, birth dates, Social Security numbers, and addresses to open new financial accounts, incur credit charges, obtain government benefits and identifications, fabricate identities, and file fraudulent tax returns well before the person whose PII was stolen becomes aware of it. Any one of these instances of identity theft can have devastating consequences for the victim, causing years of often irreversible damage to their credit scores, financial stability, and personal security. Likewise, the exfiltration of PHI puts Plaintiffs and the Class Members at a present and continuing risk of medical identity theft, which poses an even more critical threat to victims because such fraud could lead to loss of access to necessary healthcare through misuse of paid-for insurance benefits or by incurring substantial medical debt.

7.     Despite the Data Brach being first detected in mid-March 2023, Orrick is still in the process of belatedly identifying and notifying impacted persons, and sent out additional data breach notices as recently as November 2023—***eight months*** after learning of the cyberattack, exacerbating the damages and risks to Class Members, and in violation of various state data breach notification

Schubert Jonckheer & Kolbe LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

statutes. The data breach notices also obscure the nature of the Orrick cyberattack and threat it posed—failing to adequately inform Plaintiffs and Class Members how many people were impacted, how the cybercriminal remotely accessed Orrick's systems, whether the exfiltrated information was encrypted or anonymized, why it took so long to notify victims, or what specific remedial steps Orrick has taken to safeguard PII and PHI within its systems and networks (or otherwise purge unnecessary information) and to prevent further cyberattacks going forward.

8.      Plaintiff Bass is a Data Breach victim and first received a notification of the Data Breach from Orrick by email on October 31, 2023. Plaintiff Frease is also a Data Breach victim and received a Notice of Data Breach letter from Orrick dated October 31, 2023.

9.      Plaintiffs, on behalf of themselves and all others similarly situated, herein allege claims for negligence, negligence *per se*, unjust enrichment or quasi-contract, invasion of privacy, violation of North Carolina's Identity Theft Protection Act (N.C. GEN. STAT. §§ 75-60, *et seq.*), violation of North Carolina's Unfair Trade Practices Act (N.C. GEN. STAT. §§ 75-1.1, *et seq.*), violation of California's Consumer Privacy Act of 2018 (CAL. CIV. CODE §§ 1798.100, *et seq.*), violation of California's Customer Records Act (CAL. CIV. CODE §§ 1798.80, *et seq.*), violation of California's Unfair Competition Law (CAL. BUS. & PROF. CODE §§ 17200, *et seq.*), and declaratory and injunctive relief. Plaintiffs, on behalf of themselves and the Class, seek: (i) actual damages, economic damages, statutory damages, and nominal damages; (ii) punitive damages; (iii) fees and costs of litigation; (iv) injunctive relief, including the adoption of reasonably sufficient practices to safeguard PII and PHI in Defendant's custody, care, and control in order to prevent incidents like the Data Breach from recurring in the future and for Orrick to provide long-term identity theft protective services to Plaintiffs and Class Members; and (v) such other relief as the Court deems just and proper.

## PARTIES

**A.      Plaintiffs**

10.      Plaintiff Robert Bass is a resident and citizen of North Carolina.

11.      Plaintiff Jody Frease is a resident and citizen of California.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

**B.** **Defendant**

12.     Defendant Orrick, Herrington & Sutcliffe LLP is a California limited liability partnership headquartered at The Orrick Building, 405 Howard Street, San Francisco, California 94105.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because at least one member of the putative Class, as defined below, is a citizen of a state other than that of Defendant, there are more than 100 putative Class Members, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

14.     This Court has general personal jurisdiction over Orrick because it maintains its principal place of business in San Francisco, California and regularly conducts business in California, and has sufficient minimum contacts in California, such as to not offend notions of fair play and substantial justice.

15.     Venue in this District is proper under 28 U.S.C. § 1391 because Orrick resides in this District, and a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, including Defendant collecting or storing the PII and PHI of Plaintiffs and the putative Class Members. Additionally, Plaintiff Frease resides in this District.

16.     Divisional Assignment: This action arises in San Francisco County, in that a substantial part of the events which give rise to the claims asserted herein occurred in San Francisco County, where Orrick is headquartered and located. Additionally, Plaintiff Frease resides in Napa County. Pursuant to L.R. 3-2(d), all civil actions that arise in San Francisco County and Napa County shall be assigned to the San Francisco or Oakland Division.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

# FACTUAL BACKGROUND

A.  **Orrick Claims to Be a Leader in Cybersecurity, Privacy, and Data Innovation in the Legal Industry.**

17.    Orrick is a law firm that touts its ability to "innovate in everything we do"[2] and utilizes a "suite of forward-thinking cybersecurity and privacy solutions [to] help[] manage global data compliance risks, protect employee and consumer data, conduct risk assessments, implement incident preparedness and response programs and defend against high-stakes litigation and regulatory enforcement actions."[3] It touts its robust experience in the cybersecurity and privacy fields, "from working on some of the largest and most complex incidents in history—including nation-state attacks with national security implications, enterprise-wide network intrusions, malicious and negligent insiders, business email compromises, ransomware attacks and everything in between."[4] In 2022, Orrick boasted total annual revenue of $1.38 billion, almost a 5% increase over its 2021 revenue figure.[5]

18.    Orrick's clients include Fortune 500 companies, "the world's leading public tech companies[,] and more than 1,600 startups,"[6] and in the course of providing legal services, Orrick must oversee, manage, and protect massive amounts of PII and PHI it regularly receives from its clients or during litigation. This includes PII and PHI from third parties who do not do any business or have any formal relationship with Orrick, like Plaintiffs, that Orrick collects, stores, and maintains.

19.    Orrick understands that data cybersecurity is critical. It advises that "[w]ithout a strong data management and compliance plan, you will increase your business' exposure to breaches,

---

[2] About Us, ORRICK, https://www.orrick.com/en/About-Us (last visited Nov. 27, 2023)

[3] Cyber, Privacy & Data Innovation, ORRICK, *supra* note 1.

[4] Cyber, Privacy & Data Innovation, FAQS, ORRICK, *supra* note 1.

[5] Rick Mitchell, *Wake Up Call: Orrick Posts $1.38 Billion Revenues for 2022* (Mar. 10, 2023), BLOOMBERG LAW, https://news.bloomberglaw.com/business-and-practice/wake-up-call-orrick-posts-1-38-billion-revenues-for-2022.

[6] Bay Area: San Francisco and Silicon Valley, ORRICK, https://www.orrick.com/Locations/Bay-Area-San-Francisco-and-Silicon-Valley (last visited Nov. 27, 2023).

---

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

intrusions, regulatory investigations and civil litigation."[7] In managing third parties' highly sensitive data, Orrick assures that is "committed to respecting your privacy" and will store such information "for no longer than necessary."[8] Regarding security, Orrick claims to employ "appropriate technical and organisational measures to protect your personal information" from loss.[9]

20.     When a cybersecurity attack occurs, Orrick claims to "support clients, executive officers and boards in every facet of an incident," which includes "counseling on … notification obligations and directing physical and information technology forensics investigations."[10] Orrick also works with clients "to identify data risks most important to your operations, conduct comprehensive privacy and cybersecurity assessments" and "prepare for a cybersecurity incident."[11]

21.     Despite these strong proclaimed proactive policies and approaches to data security and privacy for its clients, Orrick failed to adequately secure and safeguard its own systems and networks from a foreseeable and preventable cyberattack. This conduct proximately resulted in the Data Breach and significant harm to Plaintiffs and the Class.

**B.      The Nearly Two-Weeklong Data Breach Exposed Valuable PII and PHI**

22.     Orrick collected and maintained Plaintiffs' and the Class's PII and PHI in its computer systems, servers, and networks. In collecting and maintaining Plaintiffs' and the Class's PII and PHI, Orrick implicitly agreed that it would protect and safeguard that PII by complying with state and federal laws and regulations and applicable industry standards. Orrick was in possession of Plaintiffs' and the Class's PII and PHI before, during, and after the Data Breach.

23.     According to the first iterations of Orrick's Notice of Data Breach letters, Orrick first detected that an unauthorized third party had gained remote access to a portion of its network,

---

[7] Cyber, Privacy & Data Innovation, ORRICK, *supra* note 1.

[8] Orrick Privacy Notice, ORRICK, https://www.orrick.com/Privacy-Notice (last visited Nov. 27, 2023).

[9] *Id.*

[10] Cyber, Privacy & Data Innovation, How We Can Help, Cybersecurity Incident Response, ORRICK, *supra* note 1.

[11] Cyber, Privacy & Data Innovation, How We Can Help, Managing Global Regulatory Compliance Risk, ORRICK, *supra* note 1.

---

Class Action Complaint                                                                                          6

including a file share that it used to store certain client files, on March 13, 2023.[12] Following an investigation with outside cybersecurity experts, Orrick determined that the Data Breach "primarily" occurred between February 28, 2023 and March 13, 2023.[13] In other words, the cyberattack went undetected for thirteen days before Orrick learned of the breach.

24.   Additionally, Orrick admitted that PII and PHI was actually stolen during the Data Breach, confessing that information was not just accessed but that the hacker "obtained files containing personal and protected health information."[14] Much of the compromised data was not information directly or voluntarily given to Orrick by its clients. Instead, the Notice of Data Breach reveals that Orrick was in possession of PII and PHI from third parties such as Plaintiffs and the Class because it "served as legal counsel for a 2020 security event involving the manager of a vision benefits plan in which you were enrolled."[15] During its representation, "Orrick obtained information about you" which was then stolen by cybercriminals.[16]

25.   The Data Breach appears to have also included PII and PHI from Orrick's own clients. By March 29, 2023, Orrick began notifying certain of its clients that their client files may have been downloaded by a cybercriminal. At the time, Orrick believed the unauthorized actor's motivation was to seek a financial payment from the law firm. Beginning on June 30, 2023—***more than three months after the Data Breach occurred***—Orrick then reported the Data Breach to various governmental agencies and attorneys general.

26.   Orrick issued additional, substantially similar Notice of Data Breach letters on July 20, 2023—***more than four months after the Data Breach occurred***—informing persons insured by Delta Dental of California that their PII and PHI were also compromised in the same Data Breach.[17] Like vision benefits plan referenced in the earlier Notice of Data Breach letters, Orrick also served

---

[12] *See* Exhibit 1.

[13] *See* Exhibit 2.

[14] *Id.*

[15] *Id.* Orrick appears to have subsequently identified EyeMed as the vision benefits plan in question.

[16] *See id.*

[17] *See* Exhibit 2.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

as legal counsel for Delta Dental. During the Delta Dental representation, "Orrick obtained information about you" which was likewise stolen in the Data Breach.[18] In a later Notice of Data Breach letter, Orrick revealed that persons whose health insurance plans were managed by Multiplan, Inc. (also a client of Orrick), were also impacted in the same Data Breach.

27.     Despite Orrick's duties and commitments to safeguard sensitive and private information, Orrick failed to follow industry-standard practices in securing Plaintiffs' and the Class Members' PII and PHI, as evidenced by the Data Breach.

28.     In response to the Data Breach, Orrick contends that it "took immediate steps to block the unauthorized access," commenced an investigation of the incident with the support of leading outside cybersecurity experts, and notified law enforcement.[19] Orrick also claims to have "deployed additional security measures and tools with the guidance of third-party experts to strengthen the ongoing security of its network."[20] Although Orrick failed to expand on what these alleged "additional security measures and tools" are, such policies and practices clearly should have been in place and fully operation *before* the Data Breach.

29.     As of July 20, 2023, Orrick claimed that the total number of persons affected by the Data Breach was 152,818. That figure was inaccurate. Since then, the actual number of persons affected by the breach has mushroomed to at least 461,100 as of August 18, 2023. However, Orrick has continued to send out additional Notice of Data Breach letters and emails as recently as November 2023—now *eight months* after learning of the cyberattack.

30.     The various Notice of Data Breach letters reveal that the following information for Plaintiffs and the Class was stolen in the cyberattack: names, addresses, telephone numbers, dates of birth, email addresses, Social Security numbers, and health, vision, or dental insurance account or identification numbers, among other sensitive, private, and confidential data.

31.     Through the Notice of Data Breach letters, Orrick also recognized the actual imminent harm and injury that flowed from the Data Breach and encouraged Data Breach victims to

---

[18] *Id.*

[19] *See id.*

[20] *See id.*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

"remain vigilant against attempts at identity theft or fraud, which includes carefully reviewing online and financial accounts, credit reports, and Explanations of Benefits ('EOBs') from your health insurers for suspicious activity."[21]  Plaintiffs and the Class were only offered two years of complimentary identity monitoring services through Orrick's chosen vendor Kroll. This offer does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the Data Breach involves PII that is difficult or even impossible to change, such as Social Security numbers and dates of birth. Further, the Data Breach exposed nonpublic, highly private information, including PHI, which is disturbing harm in of itself. Even with complimentary short-term identity monitoring services, the risk of identity theft and unauthorized use of Plaintiffs' and Class Members' PII and PHI remain very high. The fraudulent activity resulting from the Data Breach may not come to light for years.

**C.**  **The Legal Industry Is Increasingly Susceptible to Data Breaches, Giving Orrick Notice That It Was a Likely Cyberattack Target**

32.     At all relevant times, Defendant knew, or should have known, that the PII and PHI it was entrusted with was a target for malicious actors. Defendant knew this given the unique type and the significant volume of data on its networks, servers, and systems, comprising individuals' detailed and confidential personal information and, thus, the significant number of individuals who the exposure of the unencrypted data would harm.

33.     As custodian of Plaintiffs' and Class Members' PII and PHI, Orrick knew or should have known the importance of protecting their PII and PHI, and of the foreseeable consequences and harms to such persons if any data breach occurred.

34.     Defendant's security obligations were especially important due to the substantial increase of cyberattacks and data breaches in recent years, particularly those targeting businesses and other organizations like Defendant, which store and maintain large volumes of PII and PHI.

35.     Largescale cyberattacks are increasingly common and well-publicized. The rate of global weekly cyberattacks rose by 7% in the first quarter of 2023 compared to the same period in

---

[21] *See id.*

2022.[22] And organizations faced an average of 1,248 attacks a week—with one out of every forty targeting a law firm or insurance provider.[23] More than 25% of the law firms surveyed in 2022 by the American Bar Association said they had experienced a data breach.[24] Indeed, "[n]ews of data breaches at prominent law firms has become close to a weekly occurrence."[25] This growing list includes firms such as Proskauer Rose LLP, Kirkland & Ellis LLP, K&L Gates LLP, Bryan Cave Leighton Paisner LLP, and Cadwalader, Wickersham & Taft LLP, among others. According to Tenace, an information technology management consultancy firm, the "diversity of client data that law firms handle—financial statements, medical data, and criminal records—makes them a valuable target for cybercriminals."[26] Yet despite these heightened risks, many law firms "lag behind industry best practices."[27]

36.     With the surging number of such attacks targeting law firms, Orrick knew or should have known that it was at high risk of cyberattack and should have taken additional and stronger precautions and preemptive measures.

37.     Furthermore, Orrick in particular was acutely aware of the inherent risks and corresponding obligations of managing and storing large amounts of PII and PHI given the law firm's practice focus on cybersecurity and data privacy. Indeed, according to Orrick, it came into possession of large amounts of the PII and PHI which was compromised in the Data Breach through its legal representation of EyeMed and Delta Dental following these companies' own data breaches. Defendant tells clients that it will "work with you to identify data risks most important to your

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

---

[22] Sam Skolnik, Sky Witley, and Olivia Cohen, *Law Firm Cyberattacks Grow, Putting Operations in Legal Peril* (July 7, 2023), BLOOMBERG LAW, https://news.bloomberglaw.com/business-and-practice/law-firm-cyberattacks-grow-putting-operations-in-legal-peril.

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

operations" and "conduct comprehensive privacy and cybersecurity assessments," and underscores that "[u]nderstanding risks and being prepared is your first line of defense."[28]

### D.   Orrick Breached Its Duties to Plaintiffs and the Class Members, and Failed to Comply with Regulatory Requirements and Industry Practices.

38.   Because Defendant was entrusted with such PII and PHI at all times herein relevant, Orrick owed to Plaintiffs and the Class a duty to exercise commercially reasonable methods and care in handling, using, maintaining, storing, and safeguarding the PII and PHI in its care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that occurred, and to promptly detect and thwart attempts at unauthorized access to its networks and systems. Defendant also owed a duty to safeguard PII and PHI because it was on notice that it was handling highly valuable data and knew there was a significant risk it would be targeted by cybercriminals. Furthermore, Orrick knew of the extensive, foreseeable harm that would ensue for the victims of a data breach, and therefore also owed a duty to reasonably safeguard that information.

39.   Security standards commonly accepted among businesses that store PII and PHI include, without limitation:

       i.      Maintaining a secure firewall configuration;

      ii.     Monitoring for suspicious or irregular traffic to servers or networks;

    iii.     Monitoring for suspicious credentials used to access servers or networks;

     iv.     Monitoring for suspicious or irregular activity by know users;

      v.     Monitoring for suspicious or unknown users;

     vi.     Monitoring for suspicious or irregular server requests;

    vii.     Monitoring for server requests for PII or PHI;

   viii.     Monitoring for server requests from VPNs; and

     ix.     Monitoring for server requests for Tor exit nodes.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

---

[28] Cyber, Privacy & Data Innovation, How We Can Help, Managing Global Regulatory Compliance Risk, ORRICK, *supra* note 1.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

40.     The U.S. Federal Trade Commission ("FTC") publishes guides for businesses for cybersecurity[29] and protection of PII which includes basic security standards applicable to all types of businesses.[30]

41.     The FTC recommends that businesses:

i.      Identify all connections to the computers where you store sensitive information.

ii.     Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

iii.    Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

iv.     Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

v.      Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hacker attacks.

vi.     Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

vii.    Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the

---

[29]   Start with Security: A Guide for Business, FTC (June 2015), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

[30]   Protecting Personal Information: A Guide for Business, FTC (Oct. 2016), *available at* https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

viii.    Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

ix.    Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

42.    As described further below, Defendant owed a duty to safeguard PII and PHI under several statutes, including the Federal Trade Commission Act ("FTC Act"), the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and the Children's Online Privacy Protection Act ("COPPA"), to ensure that all information it received, maintained, and stored was secure. These statutes were enacted to protect Plaintiffs and the Class Members from the type of conduct in which Defendant engaged, and the resulting harms Defendant proximately caused Plaintiffs and the Class Members.

43.    Under the FTC Act, Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII and PHI of Plaintiffs and Class Members. Under HIPAA, 42 U.S.C. § 1320d, and its implementing regulations, 45 C.F.R. §§ 160, *et seq.*, Defendant had a duty to securely store and maintain the PII and PHI of Plaintiffs and Class Members which was collected in conjunction with receiving medical services. And under COPPA, 15 U.S.C. §§ 6501-6505, Defendant had a "mandate[d]" duty "get parental consent up front before collecting personal information from children under 13" and to "provide parents with the right to review and delete their children's information." Furthermore, under Section 312.10 of COPPA, Defendant could only "retain children's personal information 'for only as long as is reasonably necessary to fulfill the purpose for which the information was collected[,]'" and thereafter had a duty to "delete [children's

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

personal information] using reasonable measures to ensure it's been securely destroyed" even absent a parent's request for the deletion of a child's personal information.[31]

44.    Defendant breached its duty to exercise reasonable care in protecting Plaintiffs' and Class Members' PII and PHI by failing to implement and maintain adequate data security measures to safeguard Plaintiffs' and Class Members' sensitive personal information, failing to encrypt or anonymize PII and PHI within its systems and networks, failing to monitor its systems and networks to promptly identify and thwart suspicious activity, failing to delete and purge PII and PHI no longer necessary for its provision of legal services to its clients, allowing unmonitored and unrestricted access to unsecured PII and PHI, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiffs' and Class Member's confidential and private information. Additionally, Defendant breached its duty by utilizing outdated and ineffectual data security measures which deviated from standard industry best practices at the time of the Data Breach. Through these actions, Orrick also violated its duties under the FTC Act, HIPAA, and COPPA.

45.    Defendant failed to prevent the Data Breach. Had Orrick properly maintained and adequately protected its systems, servers, and networks, the Data Breach would not have occurred.

46.    Additionally, the law imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of PII and PHI to Plaintiffs and Class Members so that they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuses of their private information. Orrick further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and Class Members, in some circumstances providing such notice up to eight months after Orrick learned of the Data Breach. In so doing, Defendant actually and proximately caused and exacerbated the harm from the Data Breach and the injuries-in-fact of Plaintiffs and Class Members.

E.    **The Experiences of Plaintiffs Bass and Frease**

47.    Bass received a Notice of Data Breach email from Orrick dated October 31, 2023, notifying him that Orrick "recently" experienced a cybersecurity incident. Orrick claimed that "[a]s

---

[31] See FTC, *Under COPPA, data deletion isn't just a good idea. It's the law.* (May 31, 2018), https://www.ftc.gov/business-guidance/blog/2018/05/under-coppa-data-deletion-isnt-just-good-idea-its-law (last visited Nov. 25, 2023).

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

a large international law firm, we occasionally receive information from our clients and other third parties, including personal information, which we possess in connection with the services we provide." It continued, "During our representation of a client, Orrick obtained information about you that was recently impacted in a security event on Orrick systems." Bass is unaware why, when, or how Orrick came into possession of his sensitive personal information, nor does Orrick's correspondence specify the identity of the "client" that provided his records to Orrick. Bass's PII impacted by the Data Breach included, at least, his name, date of birth, and Social Security number.

48.     Frease received a Notice of Data Breach letter from Orrick dated October 31, 2023, likewise notifying her that Orrick "recently" experienced a cybersecurity incident. Frease's letter included substantially identical information and representations to those contained in Bass's Notice of Data Breach email. Frease is unaware why, when, or how Orrick came into possession of her sensitive personal information, nor does Orrick's correspondence specify the identity of the "client" that provided her records to Orrick. In connection with receiving dental care and services through a prior employer, Frease provided her PII to Delta Dental. According to Defendant, Orrick acted as legal counsel for Delta Dental, during which time Orrick received PII from Delta Dental subscribers. Such Delta Dental PII was compromised during the Data Breach. Frease's PII impacted by the Data Breach included, at least, her name and Social Security number.

49.     As a proximate result of the Data Breach, Bass has already spent between two and four hours dealing with its consequences since receiving notice thereof on October 31, 2023, including time spent verifying the legitimacy of the Notice of Data Breach correspondence and self-monitoring his accounts and credit reports to monitor potentially suspicious and fraudulent activity. This time has been lost forever and cannot be recaptured. Additionally, Bass and Frease will spend time protecting themselves from identity theft resulting from the Data Breach for the foreseeable future and beyond.

50.     In the months following the Data Breach, Bass has experienced an uptick in phishing emails and phone calls, which he believes resulted from the Data Breach. At one point, Bass was bombarded with as many as fifteen fraudulent or spam phone calls daily. In the months following the Data Breach, Frease has experienced an uptick in phishing texts and spam telephone calls, which

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

she believes resulted from the Data Breach. Some of these phishing texts attempt to lure Frease into dubious activity or transactions. Frease is now bombarded with around one or two phishing texts daily and several spam phone calls weekly.

51.     Bass has concerns for his personal financial security as a result of the Data Breach given the highly personal nature of PII exposed. Plaintiff Bass has and is experiencing significant stress and frustration because of the Data Breach. Likewise, Frease has experienced significant frustration following the Data Breach given Defendant's conduct at issue, the sensitive nature of her stolen PII, and Orrick's extreme delay in notifying her that information was compromised. This goes beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that the law contemplates and addresses.

52.     Bass and Frease suffered actual injury in the form of damages to and diminution in the value of their PII—a form of intangible property was entrusted to Orrick, which was compromised in and as a proximate result of the Data Breach.

53.     Bass and Frease have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse proximately resulting from their PII being obtained by unauthorized third parties and possibly cybercriminals.

54.     Bass and Frease have a continuing interest in ensuring that their PII, which remains within Orrick's possession and control, is protected and safeguarded against future data breaches or cybersecurity risks.

55.     Defendant deprived Bass and Frease of the earliest opportunity to guard themselves against the Data Breach's harmful effects by failing to promptly notify them about it. Instead, **_Orrick waited more than seven months_**, without any explanation whatsoever.

F.     **Plaintiffs Bass and Frease and the Class Suffered Actual and Impending Injuries Resulting From the Data Breach**

56.     As a proximate result of Defendant's completely unreasonable security practices, identity thieves now possess the sensitive PII and PHI of Bass, Frease, and the Class. That information is extraordinarily valuable on the black market and incurs direct costs to Bass, Frease, and the Class. On the dark web—an underground Internet black market—criminals openly buy and

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

sell stolen PII and PHI to create "identity kits" worth up to $2,000 each that can be used to create fake IDs, gain access to bank accounts, social media accounts, and credit cards, file false insurance claims or tax returns, or rack up other kinds of expenses.[32] And, "[t]he damage to affected [persons] may never be undone."[33]

57.     Unlike the simple credit-card breaches at retail merchants, these damages cannot be avoided by canceling and reissuing plastic cards or closing an account. Identity theft is far more pernicious than credit card fraud. Criminals' ability to open entirely new accounts—not simply prey on existing ones—poses far more dangerous problems. Identity thieves can retain the stolen information for years until the controversy has receded because victims may become less vigilant in monitoring their accounts as time passes. Then, at any moment, the thief can take control of a victim's identity, resulting in thousands of dollars in losses and lost productivity. The U.S. Department of Justice has reported that in 2021, identity theft victims spent on average about four hours to resolve problems stemming therefrom and that the average financial loss experienced by an identity theft victim was $1,160 per person.[34] Additionally, about 80% of identity theft victims reported some form of emotional distress resulting from the incident.[35]

58.     Social Security numbers are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult to change. The Social Security Administration stresses that the loss of an individual's Social Security number can lead to identity theft and extensive financial fraud:

---

[32] Nick Culbertson, *Increased Cyberattacks on Healthcare Institutions Shows the Need for Greater Cybersecurity* (Jun. 7, 2021), FORBES, https://www.forbes.com/sites/forbestechcouncil/2021/06/07/increased-cyberattacks-on-healthcare-institutions-shows-the-need-for-greater-cybersecurity/?sh=ca928c05650d.

[33] *Id.*

[34] Erika Harrell and Alexandra Thompson, Victims of Identity Theft, 2021, U.S. DEPARTMENT OF JUSTICE, OFFICE OF JUSTICE PROGRAMS, BUREAU OF JUSTICE STATISTICS (Oct. 2023), *available at* https://bjs.ojp.gov/document/vit21.pdf.

[35] *Id.*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

> Identity theft is one of the fastest growing crimes in America. A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, when they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought.
>
> Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[36]

59.     Even when an injured person successfully goes through the cumbersome and time-consuming process of changing their Social Security number following identity theft, the Social Security Administration cautions individuals to "[k]eep in mind that a new number probably won't solve all your problems" and "can't guarantee you a fresh start."[37]

60.     Class Members' credit profiles can be destroyed before they even realize what happened, and they may be unable to legitimately borrow money, obtain credit, or open bank accounts. Class Members can be deprived of legitimate tax refunds or, worse yet, may face state or federal tax investigations due to fraud committed by an identity thief. And even the simple preventive step of adding oneself to a credit-fraud watch list to guard against these consequences substantially impairs Class Members' ability to obtain additional credit. In fact, many experts advise victims to place a freeze on all credit accounts, making it impossible to rent a car, get student loans, buy or rent big-ticket items, or complete a major new car or home purchase.

61.     Cybercriminals sell health information at a far higher premium than stand-alone PII. This is because health information enables thieves to go beyond traditional identity theft and obtain medical treatments, purchase prescription drugs, submit false bills to insurance companies, or even undergo surgery under a false identity.[38] The shelf life for this information is also much longer—

---

[36] Identity Theft and Your Social Security Number, U.S. SOCIAL SECURITY ADMINISTRATION (JULY 2021), *available at* https://www.ssa.gov/pubs/EN-05-10064.pdf.

[37] *Id.*

[38] Medical Identity Theft: FAQs for Health Care Providers and Health Plans, FTC, *available at* https://www.ftc.gov/system/files/documents/plain-language/bus75-medical-identity-theft-faq-health-care-health-plan.pdf (last visited Nov. 29, 2023).

while individuals can update their credit card numbers, they are less likely to change their health insurance information. When medical identity theft occurs, the associated costs to victims can be exorbitant. According to a 2015 study, at least 65% of medical identity theft victims had to "pay an average of $13,500 to resolve the crime."[39]

62.    Orrick's data breach notices to affected persons do not provide adequate remediation and compensation for its wrongful conduct and actions described herein. Therein, Orrick only offered affected individuals two years of free identity protection service through Kroll.

## **CLASS ACTION ALLEGATIONS**

63.    Pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), as applicable, and (c)(4), Plaintiffs seek certification of the following nationwide class (the "Nationwide Class" or the "Class"):

> All persons whose PII or PHI was compromised in the Data Breach discovered by Orrick on or about March 13, 2023, including all persons who were sent a notice of the Data Breach (and each person a "Class Member").

64.    Within the Nationwide Class, there are two Subclasses defined as follows:

> All persons residing in the State of North Carolina whose PII or PHI was compromised in the Data Breach discovered by Orrick on or about March 13, 2023, including all North Carolina residents who were sent a notice of the Data Breach (the "North Carolina Subclass," and each person a "North Carolina Subclass Member").

> All persons residing in the State of California whose PII or PHI was compromised in the Data Breach discovered by Orrick on or about March 13, 2023, including all California residents who were sent a notice of the Data Breach (the "California Subclass," and each person a "California Subclass Member").

65.    Excluded from the Nationwide Class and Subclasses are governmental entities, Orrick, any entity in which Orrick has a controlling interest, and Orrick's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Nationwide Class and Subclasses are any judges, justices, or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

---

[39] Justin Klawans, *What is medical identity theft and how can you avoid it?*, THE WEEK (Aug. 2, 2023), https://theweek.com/feature/briefing/1025328/medical-identity-theft-how-to-avoid.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

66.     This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), and satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these rules.

67.     *Numerosity Under Rule 23(a)(1)*. The Nationwide Class and Subclasses are so numerous that the individual joinder of all members is impracticable, and the disposition of the claims of all members of the Nationwide Class and Subclasses in a single action will provide substantial benefits to the parties and the Court. Although the precise number of members of the Nationwide Class and Subclasses are unknown to Plaintiffs at this time, on information and belief, the proposed Nationwide Class contains at least 461,100 individuals, as reported to the Maine Attorney General. On information and belief and given the size of the Nationwide Class, the proposed Subclasses contains at least thousands of individuals. Discovery will reveal, through Orrick's records, the approximate number of members of the Nationwide Class and Subclasses.

68.     *Commonality Under Rule 23(a)(2)*. Common legal and factual questions exist that predominate over any questions affecting only individual members of the Nationwide Class and Subclasses. These common questions, which do not vary among members of the Nationwide Class or the Subclasses and which may be determined without reference to any Nationwide Class or Subclass Member's individual circumstances, include, but are not limited to:

a.     Whether Defendant knew or should have known that its computer systems and networks were vulnerable to unauthorized third-party access or a cyberattack;

b.     Whether Defendant failed to utilize and maintain adequate and reasonable security and preventive measures to ensure that its computer systems and networks were protected;

c.     Whether Defendant failed to take available steps to prevent and stop the Data Breach from occurring;

d.     Whether Defendant owed a legal duty to Plaintiffs and Class Members to protect their PII and PHI;

e.     Whether Defendant breached any duty to protect the PII or PHI of Plaintiffs and Class Members by failing to exercise due care in protecting their sensitive and private information;

f.    Whether Defendant provided timely, accurate, and sufficient notice of the Data Breach to Plaintiffs and the Class Members;

g.    Whether Plaintiffs and Class Members have been damaged by the wrongs alleged and are entitled to actual, statutory, or other forms of damages and other monetary relief; and

h.    Whether Plaintiffs and Class Members are entitled to injunctive or equitable relief, including restitution.

69.    _Typicality Under Rule 23(a)(3)_. Plaintiffs' claims are typical of the claims of the Nationwide Class and Subclasses. Bass and Frease, like all proposed members of the Class and Subclasses, had their PII or PHI compromised in the Data Breach. Orrick's uniformly unlawful course of conduct injured Bass, Frease, Class Members, and members of the Subclasses in the same wrongful acts and practices. Likewise, Bass, Frease, and other Class Members must prove the same facts in order to establish the same claims.

70.    _Adequacy of Representation Under Rule 23(a)(4)_. Bass and Frease are adequate representatives of the Nationwide Class and Subclasses because they are Nationwide Class Members, Bass and Frease are members of the North Carolina and California Subclasses, respectively, and their interests do not conflict with the interests of the Nationwide Class or Subclasses. Bass and Frease have retained counsel competent and experienced in complex litigation and consumer protection class action matters such as this action, and Bass and Frease and their counsel intend to vigorously prosecute this action for the Nationwide Class's and Subclasses' benefit and have the resources to do so. Bass and Frease and their counsel have no interests adverse to those of the other members of the Nationwide Class or Subclasses.

71.    _Predominance and Superiority_. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of each Nationwide Class and Subclass Member's claim is impracticable. The damages, harm, and losses suffered by the individual members of the Nationwide Class and Subclasses will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Orrick's wrongful conduct. Even if each Nationwide Class and Subclass Member could afford individual litigation, the Court system could not. It would be unduly burdensome if tens

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

of thousands of individual cases or more proceeded. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those individuals with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the Courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

72.     As a result of the foregoing, class treatment under Fed. R. Civ. P. 23(b)(2) and (b)(3) is appropriate.

### FIRST CAUSE OF ACTION
**Negligence**
***(On Behalf of Plaintiffs and the Nationwide Class)***

73.     Plaintiffs incorporate by reference and reallege paragraphs 1-62 as if fully set forth herein.

74.     In the course of providing legal services, Defendant solicited, gathered, and stored the PII and PHI of Plaintiffs and Class Members. Because Defendant was entrusted with such PII and PHI at all times herein relevant, Orrick owed to Plaintiffs and the Class a duty to exercise commercially reasonable methods and care in handling, using, maintaining, storing, and safeguarding the PII and PHI in its care, control, and custody, including by implementing industry-standard security procedures sufficient to reasonably protect the information from the Data Breach, theft, and unauthorized use that occurred, and to promptly detect and thwart attempts at unauthorized access to its networks and systems. This duty arose independently from any contract.

75.     Defendant knew, or should have known, of the risks inherent in collecting and storing massive amounts of PII and PHI, including the importance of adequate data security and the high frequency of ransomware attacks and well-publicized data breaches both generally and the increasing rate of cybercriminals specifically targeting the legal industry and law firms, like Defendant. Defendant also knew or should have known about these aforementioned risks given the past and current legal services it provided or provides to businesses and other organizations coping with their own widescale data breaches. Orrick owed a duty of care to Plaintiffs and Class Members

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

because it was foreseeable that Orrick's failure to adequately safeguard their PII and PHI in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that sensitive information. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and the Class's PII and PHI by failing to limit access to this information to unauthorized third parties and by not properly supervising both the way the PII and PHI was stored, used, and exchanged, and those in its employ responsible for such tasks.

76.    Defendant owed to Plaintiffs and members of the Class a duty to notify them within a reasonable timeframe of any breach to the security of their PII and PHI. Orrick also owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and circumstances of the Data Breach. This duty is required and necessary for Plaintiffs and the Class to take appropriate measures to protect their PII and PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

77.    Defendant also had a common law duty to prevent foreseeable harm to others. Defendant had full knowledge of the sensitivity and high value of the PII and PHI that it stored and the types of foreseeable harm and injury-in-fact that Plaintiffs and Class Members could and would suffer if that PII and PHI were wrongfully disclosed, leaked, accessed, or exfiltrated. Orrick's conduct created a foreseeable and unreasonable risk of harm to Plaintiffs and Class Members, who were the foreseeable victims of Orrick's inadequate data security practices.

78.    Defendant violated its duty to implement and maintain reasonable security procedures and practices, including through its failure to adequately restrict access to its file share systems that held hundreds of thousands of individuals' PII and PHI or encrypt or anonymize such data. Orrick's duty included, among other things, designing, maintaining, and testing Orrick's information security controls to ensure that PII and PHI in its possession was adequately secured by, for example, encrypting or anonymizing sensitive personal information, installing intrusion detection and deterrent systems and monitoring mechanisms, and using access controls to limit access to sensitive data.

79.    Orrick's duty of care also arose by operation of statute, as follows:

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

a.     Pursuant to the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act"), Defendant had a duty to provide fair and adequate computer systems and data security practices to safeguard the PII and PHI of Plaintiffs and Class Members;

b.     Pursuant to HIPAA, 42 U.S.C. § 1320d, and its implementing regulations, 45 C.F.R. §§ 160, *et seq.*, Defendant had a duty to securely store and maintain the PII and PHI of Plaintiffs and Class Members which was collected in conjunction with receiving medical services. Additionally, the HIPPA Breach Notification Rule, 45 C.F.R. § 164.400-414, required Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach";

c.     Pursuant to COPPA, 15 U.S.C. §§ 6501-6505, Defendant had a "mandate[d]" duty "get parental consent up front before collecting personal information from children under 13" and to "provide parents with the right to review and delete their children's information." Furthermore, under Section 312.10 of COPPA, Defendant could only "retain children's personal information 'for only as long as is reasonably necessary to fulfill the purpose for which the information was collected[,]'" and thereafter had a duty to "delete [children's personal information] using reasonable measures to ensure it's been securely destroyed" even absent a parent's request for the deletion of a child's personal information.

80.     These statutes—the FTC Act, HIPAA, and COPPA—were enacted to protect Plaintiffs and the Class Members from the type of conduct in which Defendant engaged.

81.     Defendant breached its duty to exercise reasonable care in protecting Plaintiffs' and Class Members' PII and PHI by failing to implement and maintain adequate data security measures to safeguard Plaintiffs' and Class Members' sensitive personal information, failing to encrypt or anonymize PII and PHI within its systems and networks, failing to monitor its systems and networks to promptly identify and thwart suspicious activity, failing to delete and purge PII and PHI no longer necessary for its provision of legal services to its clients, allowing unmonitored and unrestricted access to unsecured PII and PHI, and allowing (or failing to prevent) unauthorized access to, and exfiltration of, Plaintiffs' and Class Member's confidential and private information. Additionally, Defendant breached its duty by utilizing outdated and ineffectual data security measures which

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

deviated from standard industry best practices at the time of the Data Breach. Through these actions, Orrick also violated its duties under the FTC Act, HIPAA, and COPPA.

82.     The law imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of PII and PHI to Plaintiffs and Class Members so that they can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuses of their private information. Orrick further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and Class Members, in some circumstances providing such notice up to eight months after Orrick learned of the Data Breach. In so doing, Defendant actually and proximately caused and exacerbated the harm from the Data Breach and the injuries-in-fact of Plaintiffs and Class Members. Timely disclosure was necessary so that Plaintiffs and Class Members could, among other things: (i) purchase identity theft protection, monitoring, and recovery services; (ii) flag asset, credit, and tax accounts for fraud, including by reporting the theft of their Social Security numbers to financial institutions, credit agencies, and the IRS; (iii) purchase or otherwise obtain credit reports; (iv) place or renew fraud alerts on a quarterly basis; (v) closely monitor loan data and public records; and (vi) take other meaningful steps to protect themselves and attempt to avoid or recover from identity theft and other harms.

83.     Orrick regularly earns annual revenues exceeding $1 billion and accordingly had the financial and personnel resources necessary to prevent the Data Breach. Orrick nevertheless failed to adopt reasonable data security measures, in breach of the duties it owed to Plaintiffs and Class Members.

84.     Plaintiffs and Class Members had no ability to protect their PII and PHI once it was in Orrick's possession and control. Orrick was in an exclusive position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

85.     But for Defendant's breach of its duty to adequately protect Class Members' PII and PHI, Class Members' PII and PHI would not have been stolen. As a result of Orrick's negligence, Plaintiffs and Class Members suffered and will continue to suffer the various types of damages alleged herein. There is a temporal and close causal connection between Orrick's failure to

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

implement adequate data security measures, the Data Breach, and the harms suffered by Plaintiffs and Class Members.

86.     As a direct and traceable result of Defendant's negligence, Plaintiffs and the Class have suffered or will suffer an increased and impending risk of fraud, identity theft, damages, embarrassment, humiliation, frustration, emotional distress, and lost time and out-of-pocket costs to mitigate and remediate the effects of the Data Breach. These harms to Plaintiffs and the Class include, without limitation: (i) loss of the opportunity to control how their personal information is used; (ii) diminution in the value and use of their personal information entrusted to Defendant; (iii) the compromise and theft of their personal information; (iv) out-of-pocket costs associated with the prevention, detection, and recovery from identity theft and unauthorized use of financial accounts; (v) costs associated with the ability to use credit and assets frozen or flagged due to credit misuse, including increased costs to use credit, credit scores, credit reports, and assets; (vi) unauthorized use of compromised personal information to open new financial and other accounts; (vii) continued risk to their personal information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect the personal information in its possession; and (viii) future costs in the form of time, effort, and money they will expend to prevent, detect, contest, and repair the adverse effects of their personal information being stolen in the Data Breach.

87.     Defendant's negligence was gross, willful, wanton, and warrants the imposition of punitive damages given the clear foreseeability of a hacking incident, the extreme sensitivity of the private information under Defendant's care, and its failure to take adequate remedial steps, including prompt notification of the victims, following the Data Breach.

88.     Plaintiffs and Class Members are entitled to all forms of monetary compensation set forth herein, including monetary payments to provide adequate long-term identity protection services. Plaintiffs and Class Members are also entitled to the injunctive relief sought herein.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

**SECOND CAUSE OF ACTION**
**Negligence *Per Se***
***(On Behalf of Plaintiffs and the Nationwide Class)***

89.    Plaintiffs incorporate by reference and reallege paragraphs 1-62 as if fully set forth herein.

90.    Pursuant to the FTC Act, 15 U.S.C. § 45, Orrick had a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and the Class's PII and PHI.

91.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers or, in this case, employees' PII. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Orrick's duty to protect Plaintiffs' and the Class Members' PII and PHI.

92.    Pursuant to HIPPA, 42 U.S.C. § 1302, *et seq.*, and COPPA, 15 U.S.C. §§ 6501-6505, Orrick also owed Plaintiffs and Class Members a duty to provide adequate data security practices and to safeguard their PII and PHI.

93.    Orrick's duty to use reasonable care in protecting confidential and sensitive data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII and PHI.

94.    Orrick violated its duties under Section 5 of the FTC Act, HIPAA, and COPPA by failing to use reasonable or adequate data security practices and measures to protect Plaintiffs' and the Class's PII and PHI and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII and PHI that Orrick collected and stored and the foreseeable consequences of a cybersecurity data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

95.    The harm that has occurred is the type of harm the FTC Act, HIPAA, and COPPA are intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against

businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

96.     But for Defendant's wrongful and negligent breach of the duties owed to Plaintiffs and Class Members, Plaintiffs and the Class Members would not have been injured.

97.     The injuries and harms suffered by Plaintiffs and the Class Members were the reasonably foreseeable result of Defendant's breach of its duties. Orrick knew or should have known that it was failing to meet its duties and that its breach would cause Plaintiffs and the Class Members to suffer the foreseeable harms associated with the exposure of their PII and PHI.

98.     Defendant's various violations and its failure to comply with the applicable laws and regulations referenced above constitutes negligence *per se*.

99.     As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and the Class have suffered harm, including loss of time and money resolving fraudulent charges; loss of time and money obtaining protections against future identity theft; lost control over the value of PII and PHI; harm resulting from damaged credit scores and information; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII and PHI, entitling them to damages in an amount to be proven at trial.

100.    Additionally, as a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class Members have suffered and will suffer the continued risks of exposure of their PII and PHI, which remain in Orrick's possession and is subject to further unauthorized disclosures so long as Orrick fails to undertake appropriate and adequate measures to protect the PII and PHI in its continued possession.

## THIRD CAUSE OF ACTION
### Invasion of Privacy
### *(On Behalf of Plaintiffs and the Nationwide Class)*

101.    Plaintiffs incorporate by reference and reallege paragraphs 1-62 as if fully set forth herein.

102.    Plaintiffs and Class Members have a legally protected privacy interest in their PII and PHI, which is and was collected, stored, and maintained by Orrick, and they are entitled to the

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

reasonable and adequate protection of their PII and PHI against foreseeable unauthorized access, as occurred with the Data Breach.

103.    Plaintiffs and Class Members reasonably expected that Defendant would protect and secure their PII and PHI from unauthorized parties and that their private information would not be accessed, exfiltrated, and disclosed to any unauthorized parties or for any improper purpose.

104.    Orrick unlawfully invaded the privacy rights of Plaintiffs and Class Members by engaging in the conduct described above, including by failing to protect their PII and PHI by permitting unauthorized third-parties to access, exfiltrate, and view this private information. Likewise, Orrick further invaded the privacy rights of Plaintiffs and Class Members, and permitted cybercriminals to invade the privacy rights of Plaintiffs and Class Members, by unreasonably and intentionally delaying disclosure of the Data Breach, and failing to properly identify what PII and PHI had been accessed, exfiltrated, and viewed by unauthorized third-parties.

105.    This invasion of privacy resulted from Defendant's failure to properly secure and maintain Plaintiffs' and the Members' PII and PHI, leading to the foreseeable unauthorized access, exfiltration, and disclosure of this unguarded data.

106.    Plaintiffs' and the Class Members' PII and PHI is the type of sensitive, personal information that one normally expects will be protected from exposure by the very entity charged with safeguarding it. Further, the public has no legitimate concern in Plaintiffs' and the Class Members' PII and PHI, and such private information is otherwise protected from exposure to the public by various statutes, regulations, and other laws.

107.    The disclosure of Plaintiffs' and the Class Members' PII and PHI to unauthorized parties is substantial and unreasonable enough to be legally cognizable and is highly offensive to a reasonable person.

108.    Orrick's willful and reckless conduct which permitted unauthorized access, exfiltration and disclosure of Plaintiffs' and the Class Members' sensitive, PII and PHI is such that it would cause serious mental injury, shame, embarrassment, or humiliation to people of ordinary sensibilities.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

109.   The unauthorized access, exfiltration, and disclosure of Plaintiffs' and the Class Members' PII and PHI was without their consent, and in violation of various statutes, regulations, and other laws.

110.   As a result of the invasion of privacy caused by Defendant, Plaintiffs and the Class Members suffered and will continue to suffer damages and injury as set forth herein.

111.   Plaintiffs and the Class Members seek all monetary and non-monetary relief allowed by law, including damages, punitive damages, restitution, injunctive relief, reasonable attorneys' fees and costs, and any other relief that is just and proper.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment / Quasi-Contract
### *(On Behalf of Plaintiffs and the Nationwide Class)*

112.   Plaintiffs incorporate by reference and reallege paragraphs 1-62 as if fully set forth herein.

113.   A monetary benefit was conferred upon Defendant through its receipt of Plaintiffs' and Class Members' PII and PHI, which Orrick used to facilitate the legal services it provided for its clients. Orrick appreciated or had knowledge of these benefits conferred upon it by Plaintiffs and the Class.

114.   Under principles of equity and good conscience, Defendant should not be permitted to retain the full monetary value of the benefit because Orrick failed to adequately protect Plaintiffs' and Class Members' PII and PHI.

115.   Plaintiffs and the Class Members have no adequate remedy at law. Orrick continues to retain their PII and PHI while exposing this sensitive and private information to a risk of future data breaches while in Defendant's possession. Defendant also continues to derive a financial benefit from using Plaintiffs' and Class Members' PII and PHI.

116.   As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class Members have suffered various types of damages alleged herein.

117.   Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and Class Members all unlawful or inequitable proceeds received by it because of its misconduct described herein and the Data Breach.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

**FIFTH CAUSE OF ACTION**
**North Carolina Identity Theft Protection Act, N.C. GEN. STAT. §§ 75-60, *et seq.***
***(On Behalf of Plaintiff Bass and the North Carolina Subclass)***

118. Plaintiff Bass incorporates by reference and reallege paragraphs 1-62 as if fully set forth herein.

119. Orrick is a "business" that owns or licenses computerized "personal information," as defined by N.C. GEN. STAT. § 75-61(1) and § 75-61(10).

120. Plaintiff Bass and North Carolina Subclass Members are "consumers" as defined by N.C. GEN. STAT. § 75-61(2).

121. Plaintiff Bass's and North Carolina Subclass Members' PII and PHI includes "personal information" as covered by N.C. GEN. STAT. § 75-61(10).

122. The Data Breach was a "security breach" as covered by N.C. GEN. STAT. § 75-61(14), in that it constituted "[a]n incident of unauthorized access to and acquisition of unencrypted and unredacted records or data containing personal information where illegal use of the personal information has occurred or is reasonably likely to occur or that creates a material risk of harm to a consumer."

123. Pursuant to N.C. GEN. STAT. § 75-65(a), Orrick was required to notify affected North Carolina residents of the Data Breach following its discovery. Such disclosure notification must "be made without unreasonable delay." N.C. GEN. STAT. § 75-65(a).

124. More specifically, pursuant to N.C. GEN. STAT. § 75-65(d), Orrick's data breach notice to affected North Carolina residents was required to include, among other things: (i) "A description of the incident in general terms"; (ii) "A description of the type of personal information that was subject to the unauthorized access"; and (iii) "A description of the general acts of the business to protect the personal information from further unauthorized access." *See* N.C. GEN. STAT. § 75-65(d)(1)-(3).

125. By failing to disclose the Data Breach in a timely and accurate manner, Orrick violated N.C. GEN. STAT. § 75-65.

126. A violation of N.C. GEN. STAT. § 75-65 is an unlawful trade practice under N.C. GEN. STAT. ART. 2A § 75-1.1.

127.    As a direct and proximate result of Orrick's violation of N.C. GEN. STAT. § 75-65, Plaintiff Bass and North Carolina Subclass Members suffered damages, as alleged above.

128.    Plaintiff Bass and North Carolina Subclass Members seek relief under N.C. GEN. STAT. §§ 75-16 and 16.1, including treble damages and attorneys' fees.

## SIXTH CAUSE OF ACTION
### North Carolina Unfair Trade Practices Act, N.C. GEN. STAT. §§ 75-1.1, *et seq.*
### *(On Behalf of Plaintiff Bass and the North Carolina Subclass)*

129.    Plaintiff Bass incorporates by reference and realleges paragraphs 1-62 as if fully set forth herein.

130.    Orrick advertised, offered, or sold goods or services in North Carolina and engaged in trade or commerce directly or indirectly affecting the people of North Carolina, as defined by N.C. GEN. STAT. § 75-1.1(b).

131.    Orrick engaged in unfair and deceptive acts and practices in or affecting commerce, in violation of N.C. GEN. STAT. § 75-1.1, including:

a.    Failing to implement and maintain reasonable cybersecurity and privacy measures to protect Plaintiff Bass and North Carolina Subclass Members' PII and PHI, which was a direct and proximate cause of the Data Breach;

b.    Failing to identify foreseeable cybersecurity and privacy risks, remediate any identified security and privacy risks, and adequately enhance cybersecurity and privacy measures in line with industry standards, which was a direct and proximate cause of the Data Breach;

c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Bass and North Carolina Subclass Members' PII and PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1320d, and COPPA, 15 U.S.C. §§ 6501-6505, which was a direct and proximate cause of the Data Breach;

d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiff Bass and North Carolina Subclass Members' PII and PHI, including by implementing and maintaining reasonable security measures;

e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Bass and North Carolina Subclass Members' PII

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

and PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1320d, and COPPA, 15 U.S.C. §§ 6501-6505;

f.      Failing to timely and adequately notify Plaintiff Bass and North Carolina Subclass Members of the Data Breach, in violation of N.C. GEN. STAT. § 75-65;

g.      Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Bass's and North Carolina Subclass Members' PII and PHI; and

h.      Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Bass's and North Carolina Subclass Members' PII and PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1320d, and COPPA, 15 U.S.C. §§ 6501-6505.

132.    Orrick's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Orrick's data security and ability to protect the confidentiality of consumers' PII and PHI.

133.    Orrick's representations and omissions were material because they were likely to deceive reasonable consumers, including Plaintiff Bass and the North Carolina Subclass Members, that their PII and PHI was not exposed and misled Plaintiff Bass and the North Carolina Subclass Members into believing they did not need to take actions to secure their identities.

134.    Orrick intended to mislead Plaintiff Bass and North Carolina Subclass Members and induce them to rely on its misrepresentations and omissions.

135.    Had Orrick disclosed to Plaintiff Bass and North Carolina Subclass Members that its data systems were not secure and, thus, vulnerable to attack, Orrick would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Orrick was trusted with sensitive and valuable PII and PHI regarding hundreds of thousands of consumers, including Plaintiff Bass and the North Carolina Subclass. Orrick accepted the responsibility of protecting this data while keeping the inadequate state of its cybersecurity controls secret from the public. Accordingly, Plaintiff Bass and the North Carolina

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

Subclass Members acted reasonably in relying on Defendant's misrepresentations and omissions, the truth of which they could not have discovered.

136.   Defendant acted intentionally, knowingly, and maliciously to violate North Carolina's Unfair Trade Practices Act, and recklessly disregarded Plaintiff Bass's and North Carolina Subclass Members' rights.

137.   As a direct and proximate result of Orrick's unfair and deceptive acts and practices, Plaintiff Bass and North Carolina Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII and PHI.

138.   Orrick's conduct as alleged herein was continuous, such that after the first violations of the provisions pled herein, each week that the violations continued constitute separate offenses pursuant to N.C. GEN. STAT. § 75-8.

139.   Plaintiff Bass and North Carolina Subclass Members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, and attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
### California Consumer Privacy Act of 2018, CAL. CIV. CODE §§ 1798.100, *et seq.*
### *(On Behalf of Plaintiff Frease and the California Subclass)*

140.   Plaintiff Frease incorporates by reference and realleges paragraphs 1-62 as if fully set forth herein.

141.   The California Consumer Privacy Act of 2018, CAL. CIV. CODE §§ 1798.100, *et seq.* ("CCPA"), was enacted to protect individuals' PII from collection and use by businesses without appropriate notice and consent.

142.   Through the conduct and actions complained of herein, Orrick violated the CCPA by subjecting Plaintiff Frease's and California Subclass Members' nonencrypted PII to unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violation of its duties to

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

implement and maintain reasonable security procedures and practices appropriate to the nature and protection of that information. Orrick thereby violated CAL. CIV. CODE § 1798.150(a).

143.   As a direct and proximate result of Defendant's acts, Plaintiff Frease's, and the California Subclass's PII was subjected to unauthorized access and exfiltration, theft, or disclosure through Defendant's computer networks, servers, and systems.

144.   As a direct and proximate result of Defendant's acts, Plaintiff Frease and the California Subclass were injured and lost money or property, including but not limited to the loss of the California Subclass's legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as described above.

145.   Orrick knew or should have known that its computer systems, servers, and networks and data security practices were inadequate to safeguard the California Subclass's PII and that the risk of a serious data breach or theft was highly likely. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information of Plaintiff Frease and the California Subclass.

146.   Plaintiff Frease and the California Subclass Members are "consumers" within the meaning of CAL. CIV. CODE § 1798.140(i) because they are California residents.

147.   Defendant collected Plaintiff Frease's and the California Subclass's "personal information" within the meaning of CAL. CIV. CODE §§ 1798.140(v) and 1798.80(e).

148.   Orrick is a limited liability partnership organized or operated for the profit or financial benefit of their owners, partners, and other shareholders. Defendant "collected" Plaintiff Frease's and the California Subclass's "personal information" within the meaning of CAL. CIV. CODE § 1798.140(v). Defendant does business in the State of California and has annual gross revenues exceeding $25 million. Accordingly, Orrick is a "business" within the meaning of the CAL. CIV. CODE § 1798.140(d) and is obligated to comply with the CCPA's requirements.

149.   Pursuant to CAL. CIV. CODE § 1798.150(b), counsel for Plaintiff Frease will serve Defendant with notice of these CCPA violations by certified mail, return receipt requested.

150.   On behalf of California Subclass Members, Plaintiff Frease presently seeks actual pecuniary damages and injunctive relief in the form of an order enjoining Defendant from continuing

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

to violate the CCPA. Unless and until Orrick is restrained by order of the Court, its wrongful conduct will continue to cause irreparable injury to Plaintiff Frease and the California Subclass.

151.   If Defendant fails to timely rectify or otherwise cure the CCPA violations described herein, individually and on behalf of the California Subclass, Plaintiff Frease reserves her right to amend this Class Action Complaint to seek statutory damages and any other relief the Court deems proper as a result of Defendant's CCPA violations pursuant to CAL. CIV. CODE § 1798.150(a).

### EIGHTH CAUSE OF ACTION
**California Customer Records Act, CAL. CIV. CODE §§ 1798.80, *et seq.***
***(On Behalf of Plaintiff Frease and the California Subclass)***

152.   Plaintiff Frease incorporates by reference and realleges paragraphs 1-62 as if fully set forth herein.

153.   "[T]o ensure that personal information about California residents is protected," the California legislature enacted CAL. CIV. CODE § 1798.81.5, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

154.   Defendant is a business that owns, maintains, or licenses personal information, within the meaning of CAL. CIV. CODE § 1798.81.5, about Plaintiff Frease and California Subclass members.

155.   Orrick violated CAL. CIV. CODE § 1798.81.5 by failing to implement reasonable measures to protect California Subclass members' PII and PHI.

156.   Businesses that own or license computerized data that includes personal information are required to notify California residents when their PII or PHI has been acquired (or has reasonably believed to have been acquired) by unauthorized persons in a data security breach "in the most expedient time possible and without unreasonable delay." CAL. CIV. CODE § 1798.82. Among other requirements, the security breach notification must include "the types of personal information that were or are reasonably believed to have been the subject of the breach." CAL. CIV. CODE § 1798.82.

157.    Defendant is a business that owns or licenses computerized data that includes personal information as defined by CAL. CIV. CODE § 1798.82.

158.    Plaintiff Frease's and California Subclass Members' PII or PHI includes personal information identified in CAL. CIV. CODE § 1798.82(h) such as their names, Social Security numbers, and health, vision, or dental insurance account or identification numbers, and is thereby covered by CAL. CIV. CODE § 1798.82.

159.    Plaintiff Frease and the California Subclass Members are "customers" within the meaning of CAL. CIV. CODE § 1798.80(c), as their personal information was provided to Defendant for the purpose of obtaining services or products.

160.    The Data Breach constituted a breach of Orrick's security systems, networks, and servers.

161.    Because Orrick reasonably believed that Plaintiff Frease's and California Subclass Members' PII or PHI was acquired by unauthorized persons during the Data Breach, Defendant had an obligation to disclose the data breach in a timely and accurate fashion as mandated by CAL. CIV. CODE § 1798.82.

162.    Orrick unreasonably delayed informing Plaintiff Frease and the California Subclass Members about the breach of security of their PII or PHI after it knew the breach had occurred. By way of example, Orrick sent Plaintiff Frease a Notice of Data breach letter dated October 31, 2023—more than seven months after Defendant first discovered that the Data Breach occurred.

163.    Upon information and belief, no law enforcement agency instructed Defendant that notification to California Subclass Members would impede an investigation. Nor do the Notice of Data Breach letters sent to California Subclass Members provide any explanation whatsoever for the extreme delay between Orrick's discovery of the Data Breach and its sending notifications to affected persons.

164.    Thus, by failing to disclose the Data Breach in a timely and accurate manner, the Defendant also violated CAL. CIV. CODE § 1798.82.

165.    Pursuant to CAL. CIV. CODE § 1798.84, "[a]ny waiver of a provision of this title is contrary to public policy and is void and unenforceable," "[a]ny customer injured by a violation of

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

this title may institute a civil action to recover damages," and "[a]ny business that violates, proposed to violate, or has violated this title may be enjoined."

166.    As a direct and proximate result of Defendant's violations of CAL. CIV. CODE §§ 1798.81.5 and 1798.82, Plaintiff Frease and California Subclass Members were (and continue to be) injured and suffered (and will continue to suffer) damages, as described above.

167.    Plaintiff Frease and California Subclass Members seek relief under CAL. CIV. CODE § 1798.84, including, but not limited to, actual damages, any applicable statutory damages, and equitable and injunctive relief.

### NINTH CAUSE OF ACTION
**California Unfair Competition Law, CAL. BUS. & PROF. CODE §§ 17200, *et seq.***
***(On Behalf of Plaintiff Frease and the California Subclass)***

168.    Plaintiff Frease incorporates by reference and realleges paragraphs 1-62 as if fully set forth herein.

169.    Defendant violated California's Unfair Competition Law (the "UCL"), CAL. BUS. & PROF. CODE §§ 17200, *et seq.*, by engaging in unlawful, unfair, or fraudulent business acts and practices that constitute acts of "unfair competition" as defined in the UCL with respect to its conduct and actions with towards Plaintiff Frease and the California Subclass.

170.    Defendant's actions as alleged herein in this Class Action Complaint constitute an "unlawful" practice as encompassed by CAL. BUS. & PROF. CODE §§ 17200, *et seq.* because Defendant's actions: (a) violated the California Consumer Records Act, CAL. CIV. CODE §§ 1798.80, *et seq.*, (b) violated the CCPA, CAL. CIV. CODE §§ 1798.100, *et seq.*, (c) constituted negligence and negligence *per se*; and (d) violated federal law and regulations, including the FTC Act, HIPAA and COPPA.

171.    Defendant's actions as alleged in this Class Action Complaint also constitute an "unfair" practice as encompassed by CAL. BUS. & PROF. CODE §§ 17200 *et seq.*, because they offend established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious. The harm caused by Defendant's wrongful conduct outweighs any utility of such conduct and has caused—and will continue to cause—substantial injury to the California Subclass. There were ample reasonably available alternatives that would have furthered Defendant's legitimate

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

business practices, including using industry-standard technologies to protect data (e.g., two-factor authorization, effective encryption and anonymization, software patches, and the purging of data no longer necessary for Defendant's services). Defendant also unreasonably delayed in notifying Plaintiff Frease and the California Subclass Members regarding the unauthorized release and disclosure of the PII and PHI. Additionally, Defendant's conduct was "unfair" because it violated the legislatively declared policies reflected by California's strong data-breach, online-privacy, and medical-privacy laws, including the California Consumer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*, the CCPA, Cal. Civ. Code §§ 1798.100, *et seq.*, the California Online Privacy Protection Act, Cal. Bus. & Prof. Code § 22575, *et seq.*, and the California constitutional right to privacy, CAL. CONST. ART. 1, § 1.

172.    As a result of Defendant's unlawful and unfair conduct, Plaintiff Frease and the California Subclass were damaged and injured by the significant costs of protecting themselves from identity theft and face ongoing and impending damages related to theft of their PII and PHI.

173.    Defendant's wrongful practices constitute a continuing course of unfair competition because, on information and belief, Defendant has failed to remedy the lax security practices or even fully notify all affected California persons. Plaintiff Frease and the California Subclass seek equitable relief pursuant to Cal. Bus. & Prof. Code § 17203 to end Defendant's wrongful practices and require Defendant to maintain adequate and reasonable security measures to protect the PII and PHI of Plaintiff Frease and the California Subclass.

174.    Plaintiff Frease and California Subclass Members lack an adequate remedy at law because the injuries here include an imminent risk of identity theft and fraud that can never be fully remedied through damages, as well as long term incalculable risk associated with medical fraud.

175.    Further, if an injunction is not issued, Plaintiff Frease and California Subclass Members will suffer irreparable injury. The risk of another such breach is real, immediate, and substantial. It took Defendant seven months to notify Plaintiff Frease and California Subclass Members of the Data Breach, it has still not provided adequate information on the cause and scope of the Data Breach. Plaintiff Frease and California Subclass Members lack an adequate remedy at law that will reasonably protect against the risk of a further breach.

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

176.    Plaintiff Frease and the California Subclass also seek an order requiring Defendant to make full restitution of all monies it received through its wrongful conduct, along with all other relief permitted under Cal. Bus. & Prof. Code §§ 17200, *et seq.*

### TENTH CAUSE OF ACTION
#### Injunctive/Declaratory Relief
#### *(On Behalf of Plaintiffs and the Nationwide Class)*

177.    Plaintiffs incorporate by reference and reallege paragraphs 1-72 as if fully set forth herein.

178.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described herein.

179.    Defendant owes a duty of care to Plaintiffs and Class Members, which required Orrick to adequately monitor and safeguard Plaintiffs' and Class Members' PII and PHI.

180.    Defendant and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns still possess the PII and PHI belonging to Plaintiffs and Class Members.

181.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiffs' and Class Members' PII and PHI and whether Defendant is currently maintaining data security measures adequate to protect Plaintiffs and Class Members from further data breaches that compromise their PII and PHI. Plaintiffs allege that Defendant's data security measures remain inadequate. Furthermore, Plaintiffs and the Class continue to suffer injury as a result of the compromise of their PII and PHI and the risk remains that further compromises of their private information will occur in the future.

182.    Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.    Defendant owes a legal duty to secure the PII and PHI of Plaintiffs and the Class within its care, custody, and control under the common law, HIPAA, COPPA, and Section 5 of FTC Act;

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

b.      Defendant breached its duty to Plaintiffs and the Class by allowing the Data Breach to occur;

c.      Defendant's existing data monitoring measures do not comply with its obligations and duties of care to provide reasonable security procedures and practices that are appropriate to protect the PII and PHI of Plaintiffs and the Class within Orrick's custody, care, and control; and

d.      Defendant's ongoing breaches of said duties continue to cause harm to Plaintiffs and the Class.

183.    This Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with legal and industry standards to protect the PII and PHI of Plaintiffs and the Class within its custody, care, and control, including the following:

a.      Order Defendant to provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

b.      Order that, to comply with Defendant's obligations and duties of care, Orrick must implement and maintain reasonable security and monitoring measures, including, but not limited to:

i.      Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems, networks, and servers on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

ii.     Encrypting and anonymizing the existing PII and PHI within its servers, networks, and systems to the extent practicable, and purging all such information which is no longer reasonably necessary for Defendant to provide adequate legal services to its clients;

iii.    Engaging third-party security auditors and internal personnel to run automated security monitoring;

iv.     Auditing, testing, and training its security personnel regarding any new or modified procedures;

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

v.      Segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems, networks, and servers;

vi.      Conducting regular database scanning and security checks; and

vii.      Routinely and continually conducting internal training and education to inform Defendant's internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach.

184.    If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach or cybersecurity incident. This risk is real, immediate, and substantial. If another Orrick data breach or cybersecurity incident occurs, Plaintiffs and the Class will not have an adequate remedy at law because monetary relief alone will not compensate Plaintiffs and the Class for the serious risks of future harm.

185.    The hardship to Plaintiffs and the Class if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Plaintiffs and the Class will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Defendant's compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendant has a pre-existing legal obligation to employ such measures.

186.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent Orrick data breach or cybersecurity incident, thus preventing future injury to Plaintiffs and the Class and other persons whose PII and PHI would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Class set forth herein, respectfully requests the following relief:

A.      Certifying this action as a class action under Fed. R. Civ. P. 23 and appointing Plaintiffs and their counsel to represent the Class and Subclasses;

B.      Entering judgment for Plaintiffs, the Class, and the Subclasses;

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220

C.     Granting permanent and appropriate injunctive relief to prohibit Defendant from continuing to engage in the unlawful acts, omissions, and practices described herein and directing Defendant to adequately safeguard the PII of Plaintiffs and the Class by implementing improved security controls;

D.     Awarding compensatory, consequential, and general damages, including nominal damages as appropriate, as allowed by law in an amount to be determined at trial;

E.     Award statutory or punitive damages and penalties as allowed by law in an amount to be determined at trial;

F.     Ordering disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendant as a result of Defendant's unlawful acts, omissions, and practices;

G.     Awarding to Plaintiffs and Class Members the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

H.     Awarding pre- and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper; and

I.     Granting such further and other relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all claims so triable.

Dated: December 1, 2023

**SCHUBERT JONCKHEER & KOLBE LLP**

*/s/ Dustin L. Schubert*
Dustin L. Schubert

Robert C. Schubert (S.B.N. 62684)
Dustin L. Schubert (S.B.N. 254876)
Amber L. Schubert (S.B.N. 278696)
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union St., Suite 200
San Francisco, California 94123
Telephone:    (415) 788-4220
Facsimile:    (415) 788-0161
E-mail:    rschubert@sjk.law
          dschubert@sjk.law

aschubert@sjk.law

*Counsel for Plaintiffs Robert Bass and Jody Frease and the Putative Class*

SCHUBERT JONCKHEER & KOLBE LLP
2001 Union St., Suite 200
San Francisco, CA 94123
(415) 788-4220